IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CONNIE MARKS,

        Plaintiff,

vs.                Case No.13-1414-JTM

CAROLYN W. COLVIN, Commissioner of
Social Security,

        Defendant.

MEMORANDUM AND ORDER

Plaintiff Connie Marks has applied for Social Security disability and supplemental security income benefits. Her application was denied by the Administrative Law Judge (ALJ) on September 27, 2012, a decision affirmed by the Appeals Council on August 29, 2013. The plaintiff appeals from the decision of the Commissioner. For the reasons provided herein, the decision of the Commissioner is affirmed.

Plaintiff-claimant Marks was born on August 16, 1976. She has stated that she became disabled beginning April 30, 2008 due to the combined effects of various ailments, including obesity, arthritis, and sleep apnea. Marks has limited education and has held only part-time jobs. The detailed facts of the case, which are incorporated herein, are set forth independently in the ALJ's opinion (Dkt. 9, Tr. 11-25), and the brief of Marks (Dkt. 14, at 3-20) and within the argument portion of the Commissioner's response (Dkt. 19, at 3-9).

The ALJ determined that Marks had the severe impairments of obesity, sacroiliac arthritis, sleep apnea, and hypothyroidism or Graves' disease. However, none of the listed impairments meets or exceeds the severity of the listed impairments in 20 CFR Pat1 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). (Tr. 13-15). The ALJ found that Marks also suffers from hypertension, hearing loss, cellulitis, adjustment disorder, and depression, but these are not severe in nature. (Tr. 11-12). Ultimately, the ALJ determined that Marks had the residual functional capacity (RFC) to do sedentary work, in that she can lift ten pounds occasionally, and smaller weights frequently. She can stand or walk a total of two hours, and sit for at least six. She can occasionally climb, stoop, kneel, crouch, and crawl. She can perform tasks not involving exposure to temperature extremes and not involving the operation of motorized vehicles. Marks can perform simple, unskilled work involving routine, repetitive tasks. (Tr. 16).

The Commissioner determines whether an applicant is disabled pursuant to a five-step sequential evaluation process (SEP) pursuant to 20 C.F.R. §§ 404.1520 and 416.920. The applicant has the initial burden of proof in the first three steps: she must show that she is engaged in substantial gainful activity, that she has a medically-determinable, severe ailment, and whether that impairment matches one of the listed impairments of 20 C.F.R. pt. 404, subpt P., app. 1. *See Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). If a claimant shows that she cannot return to her former work, the Commissioner has the burden of showing that she can perform other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(f). *See Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

The court's review of the Commissioner's decision is governed by 42 U.S.C. 405(g) of the Social Security Act.  Under the statute, the Commissioner's decision will be upheld so long as it applies the "correct legal standard," and is supported by "substantial evidence" of the record as a whole. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).

Substantial evidence means more than a scintilla, but less than a preponderance. It is satisfied by evidence that a reasonable mind might accept to support the conclusion. The question of whether substantial evidence supports the Commissioner's decision is not a mere quantitative exercise; evidence is not substantial if it is overwhelmed by other evidence, or in reality is a mere conclusion. *Ray*, 865 F.2d at 224. The court must scrutinize the whole record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992).

This deferential review is limited to factual determinations; it does not apply to the Commisioner's conclusions of law. Applying an incorrect legal standard, or providing the court with an insufficient basis to determine that correct legal principles were applied, is grounds for reversal. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

The plaintiff argues that the ALJ erred by preferring the testimony of the vocational expert over Social Security Rulings, such as S.S.R. 83-14, which hold that an inability to stoop causes a significant erosion in employment opportunities. However, plaintiff fails to support a fundamental element of this claim of error — that she was in fact unable to stoop. The ALJ did not find that Marks was precluded from stooping, rather, based upon a consideration of the entire record, he found that she could do so occasionally. This

3

determination was predicated in part on the ALJ's finding of the plaintiff's limited credibility. Yet plaintiff's initial Appeal Brief does not challenge the ALJ's credibility assessment. (Dkt. 14, at 21-26).

Insead, the initial appeal brief presents an entirely different argument — that the ALJ erred in considering the specific testimony of the vocational expert, instead of finding S.S.R. 83-14 decisive on the issue of the erosion of the job base.

As the Commissioner notes in its Response, plaintiff presents no authority for the contention that an ALJ must consider Social Security Rulings as decisive, ignoring the more particularized testimony of a vocational expert. Indeed, the Rulings themselves contemplate the use of such testimony. *See* SSR 83-14, 1983 WL 31254, at *4 (vocational testimony may be helpful even in ostensibly "'obvious' types of cases"); SSR 96-9p, 1996 WL 374185, at *8 ("Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping."). *See also Thomas v. Barnhart*, 147 F. App'x 755, 758 (10th Cir. Sep. 2, 2005) (finding that a vocational expert's testimony that a claimant could still perform certain sedentary jobs despite an inability to stoop constituted substantial evidence on which the ALJ could rely). "The whole point of vocational testimony is to go beyond facts already established through publications eligible for judicial or administrative notice and provide an alternative avenue of proof." *Rogers v. Astrue*, 312 F. App'x 138, 142,(10th Cir. Feb. 17, 2009) (citing *Gay v. Sullivan*, 986 F.2d 1336, 1340 (10th Cir. 1993)).

Here, the vocational expert testified that, even if plaintiff could never stoop, light

work still existed which she could perform.(Tr. 58-59).

Plaintiff's Reply brief (Dkt. 20) does mention the issue of credibility, but only indirectly and in passing. Thus, the brief argues that "improperly promoted perceptions regarding Claimant's credibility ... do not automatically infect" the opinions from various medical sources (*id*. at 7), without ever showing *how* the ALJ's credibility assessment was erroneous. *See also id*. at 8 (condemning "the attempt to color Ms. Marks as a complete and unrestrained **liar**") (emphasis by plaintiff). But the ALJ does not assume any such "automatic infection." Rather, the opinion accurately observes that there were substantial reasons for finding that plaintiff had limited credibility, and plaintiff's conclusory attempts to gloss over these problems provides no basis for reversal.

Because plaintiff never develops any argument against the ALJ's credibility assessment, as opposed to simply asserting it in summary fashion, any claim of error is waived. *See Coffland v. Colvin*, No. 13-1030-JWL, 2014 WL 1571797, at *5 (D. Kan. Apr. 17, 2014) (plaintiff waived review of ALJ's credibility determination "by failing to develop any argument with regard to it"). Even assuming the argument was not waived, the court finds no basis for disturbing that assessment. The ALJ found inconsistencies in plaintiff's subjective reports of her impairments. Although she claimed her impairments limited her sight, the ALJ noted the record fails to indicate that she ever sought treatment for her vision. (Tr. 17-18, 244). She claimed a history of asthma which does not appear in the medical record. (Tr. 18). Plaintiff reported difficulty sleeping, but did not use a continuous positive airway pressure device (CPAP) prescribed for her. The ALJ further found that

plaintiff's extremely sporadic work history indicated a lack of motvation for work. (Tr. 16-17).  The ALJ also noted that while plaintiff claimed she could not work after becoming disabled in April, 2008, there was evidence that she continued working in 2008 and 2009. (Tr. 17).  The court specifically noted that plaintiff's alleged onset date of 2008 "does not correspond to any medical evidence, injury, illness, or change in her underlying medical condition." (*Id.*)  Further, the ALJ found that plaintiff's reports of her work history and education appeared markedly vague or inconsistent.

The ALJ also noted the report filed by Dr. Molly Allen (Psy.D.) who conducted a consultative psychological examination on November 29, 2010. Dr. Allen noted that Marks's reporting was inconsistent. She stated that she homeschooled her daughters. However, Allen noted that Marks was driven to her mental status exam by her uncle, who explained that the family was late because of the need to take the daughters to school. Dr. Allen further found that Marks was "vague about her work history," but indicated that she had worked with her mother's housekeeping service until the Spring of 2010 — after the time of the alleged onset of disability. (Tr. 445). Finally, Dr. Allen reported:

> At the end of the appointment Ms. Marks was observed leaving the building with her family. She continued to groan and huff and puff down the hallway to the elevator, and through the lobby. However, as soon as she reached the buidling main doors, her pace picked up, and she easily walked across the sidewalk, stepped off the curb, and independently got into the front seat of the family van.

(Tr. 446-47).

The court finds no error in the ALJ's credibility assessment.

6

The plaintiff's Reply brief does raise several issues for the first time. Thus, she argues that the ALJ unfairly limited the weight accorded the opinions of Dr. Mei Cheng (M.D.), Dr. Natalia Montoya, and a physical therapist, Brenda Hendricks, indicating limited stooping ability. She also stresses the recommendation by Aaron Rupp (D.O.) that she should not stoop. Finally, plaintiff argues that the ALJ should have contacted the providers for further information. Reviewing the entire record, the court finds no error.

The consultative examination in April, 2012 by Dr. Rupp (Tr. 743-52) does recommend that Marks refrain from stooping. However, the ALJ gave explicit reasons Dr. Rupp's conclusions were entitled to limited weight. Dr. Rupp's own treatment notes indicate that his results might be of limited usefulness, given plaintiff's limited effortts to aid in the examination. As he put it, "Patient cooperation was less than maximal." (Tr. 744, 749). The ALJ also found that Dr. Rupp's assessment overstated the extent of plaintiff's limitations. The opinion notes Dr. Rupp's prohibition of any use of foot controls by plaintiff on the grounds that she could not see her feet due to her obesity, without explaining how this condition actually would limit her ability to use foot controls.

Further, the opinions by Dr. Rupp and Dr. Cheng were entitled to limited weight because their conclusions are not supported by evidence in the medical record. (Tr. 21). Dr. Cheng presented her opinion by checkbox format, with no description of the underlying testing. Moreover, Dr. Cheng's opinion rested on Marks's cooperation during the testing. As noted earlier, Dr. Rupp independently concluded that Marks failed to cooperate fully during his examination of her. The opinion by Dr. Cheng rests largely on plaintiff's own

subjective complaints, and is not supported by contemporaneous treatment notes. The ALJ noted that Dr. Cheng opined to extreme limitations in Marks's functional capacity, but Dr. Cheng failed to explain these extreme limitations in her report (Tr. 425-29), and the medical record fails to support such limitations. (Tr. 375-6, 386-87, 391, 394-95, 398-99, 403, 406-07, 411-13). Plaintiff reported severe pain to Dr. Cheng which caused problems with concentration but the record otherwise indicates only sporadic complaints of pain (Tr. 384, 391, 394, 398, 403, 406-07, 411-12) or an absence of pain. (Tr. 384, 391, 394, 398, 403, 406-07, 411-12). The ALJ correctly concluded that evidence failed to support Dr. Cheng's opinion of disabling knee, ankle, and hip pain.

The ALJ gave limited weight to the opinion of Dr. Montoya. (Tr. 22). This assessment was not erroneous. First, disability, requires evidence of functional limitations, not just medical diagnoses. See 20 C.F.R. § 416.945(e). Here, Dr. Montoya's letter presents a series of diagnosed impairments, without giving any specific functional limitations in her letter (Tr. 474). Further, the ALJ also found Dr. Montoya's opinion internally inconsistent, since it simultaneously recommends "very minimal physical activity" while also advising her to "increase her physical activity." (Tr. 22, 474). An ALJ may properly discount an opinion due to internal inconsistency. *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007). Further, the ALJ determined that Dr. Montoya's opinions were contradicted by other evidence in the record. For example, she opined that plaintiff suffered from memory and judgment problems. The ALJ noted that these findings were not supported by the psychological assessment given by Dr. Allen.

As a physical therapist, Ms. Hendricks is not a treating physician. Under 20 C.F.R. § 416.913(d)(1), she is not an "acceptable medical source" but is considered an "other source." The opinions of such sources are weighed using factors analogous to those used to weigh the opinions of "acceptable medical sources." 20 C.F.R. § 416.927(c); S.S.R. 06-03p. Hendricks examined Marks on July 21, 2010, and later reported extreme limitations. As the ALJ noted, the opinion by Ms. Hendricks is inconsistent. While Ms. Hendricks states that Marks was "cooperative," her opinion simultaneously notes that Marks entirely refused to attempt some activities, stating that "it was simply either too hard, too painful or she felt that she was too heavy to attempt the test." (Tr. 433). Frequently, Marks "would simply state to the evaluator, 'Oh, I don't think I can do that' or 'That's really starting to hurt.'" (*Id*.) Further, Hendricks found significant that "it did take Ms. Marks approximately 15 minutes to walk from the waiting room to the testing area." (*Id*.) As the ALJ noted, however, Dr. Allen found that Marks can walk at a relatively normal pace outside of a testing environment.

In contrast, the ALJ gave significant weight to the opinion testimony of Dr. Gerald Siemsen (M.D.), who found that Marks is capable of occasional stooping. (Tr. 737-44).Plaintiff contends that the ALJ erred in ignoring the assessments of favorable medical sources, and acting in "slavish sycophancy" with "non-examining reviewing medical personnel" in preference to other sources. (Dkt. 20, at 2, 13). This is not what the ALJ did. As noted earlier, the ALJ explicitly offered permissible reasons for limiting the weight accorded the medical sources cited by plaintiff. *See Williamson v. Barnhart*, 350 F.3d 1097,

1099 (10th Cir. 2003) (ALJ may accord limited weight to a treating medical source opinion which is conclusory or unsupported by medical evidence). Under S.S.R. 96-6p, and ALJ may assign substantial weight to the opinion of a non-examining physician.

Finally, the ALJ did not err in resolving the claim on the basis of the medical evidence as presented. Further exploration of medical evidence may be necessary when the existing evidence is "so incomplete that it could not be considered." *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001). Here, the ALJ had the entire medical record to consider, and found an appropriate basis for weighing all medical sources. Under 20 C.F.R. § 416.920b(c), an  ALJ *may* recontact medical sources in the event the existing evidence is insufficient to make any determination as to disability. However, the mere fact that the ALJ reached a decision against disability did not mandate further inquiry, as "it is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician." *White*, 287 F.3d at 908. Here, as noted earlier, the ALJ had a sufficient basis for weighing the medical sources, and for concluding that Marks was not disabled based on the existing record.

IT IS ACCORDINGLY ORDERED this day of March, 2015, that the decision of the Commissioner is hereby AFFIRMED.

s/ J. Thomas Marten

 J. THOMAS MARTEN, JUDGE